IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CHARLES HANEY,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )        No. 23-cv-02686-TLP-tmp
                                  )
BLAZIN WINGS, INC., d/b/a         )
BUFFALO WILD WINGS,               )
                                  )
        Defendant.                )
_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS
IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF BRUCE BRAWNER AND
MALCOLM BRISTER

_____

Before the court are two motions in limine to exclude experts Bruce Brawner and Malcolm Brister, filed by defendant Blazin Wings, Inc., d/b/a Buffalo Wild Wings ("Blazin Wings") on November 18, 2024. (ECF Nos. 58, 59.) Plaintiff Charles Haney responded in opposition on December 5, 2024. (ECF Nos. 63, 64.) The motions were referred to the undersigned for determination on November 19, 2024. (ECF No. 60.) A hearing was held on January 8, 2025. (ECF No. 66.) For the reasons below, Blazin Wings's motions are GRANTED in part and DENIED in part.

I.    BACKGROUND

This case arises from a November 2, 2022, "trip and fall" incident at Blazin Wings's restaurant in Jackson, Tennessee. (ECF Nos. 10 at PageID 28-29; 63 at PageID 573.) Haney was visiting the

restaurant to perform routine maintenance on an ATM, one of several that Haney owned and operated throughout West Tennessee. (ECF No. 63 at PageID 573; see also ECF No. 58-2 at PageID 406-07 (describing Haney's business).) Haney alleges that, while entering the restaurant, he "tripped and fell over an entrance mat which had been rolled-up near the entranceway and was not visible from the outside." (ECF No. 63 at PageID 573.) Due to his injuries, Haney "wasn't able to service any more [ATMs] after [his] accident," and therefore the machines are no longer "in business." (ECF No. 58-2 at PageID 410.)

On October 30, 2023, Haney initiated this tort action against Blazin Wings, seeking compensatory relief of up to $3 million, including lost wages. (ECF Nos. 1, 10.) To support his claim for lost wages, Haney retained vocational expert Bruce Brawner to testify about Haney's "current employability and post-incident loss of wage earning capacity." (See ECF No. 58-7 at PageID 427.) Brawner also conducted a "vocational rehabilitation evaluation" to estimate Haney's post-incident loss of household services. (Id. at PageID 452.) Haney additionally seeks to admit testimony from economist Bill Malcolm Brister, who calculated, using Brawner's expert reports and other data, the present value of Haney's lost earnings and lost household services.[1] (See ECF No. 59-2 at PageID

_____

[1]Throughout their briefs, the parties alternatively refer to "Malcolm Brister" or "Dr. Bristor." (See ECF Nos. 59-1 at PageID

- 2 -

493-95.)

On November 18, 2024, Blazin Wings filed the instant motions
to exclude both Brawner's and Brister's opinions. (ECF Nos. 58,
59.) Relying on Federal Rules of Evidence 702 and 403, Blazin Wings
makes three overarching arguments with respect to Brawner: first,
Brawner's testimony is unnecessary because the jury can assess
Haney's loss of earning capacity without that testimony; second,
Brawner's opinions are unreliable and untrustworthy; and third,
Brawner's testimony will confuse the jury. (ECF No. 58-1 at PageID
395-400.) As to Brister, Blazin Wings likewise invokes Rules 702
and 403. (ECF No. 59-1 at PageID 486.) It argues that "Dr.
Brister's opinions are based solely on the unreliable and
untrustworthy figures used by Mr. Brawner," and should accordingly
be excluded as cumulative, duplicative, and unreliable. (Id. at
PageID 489.) Finally, Blazin Wings contends that because Haney
cannot recover damages for loss of household services under
Tennessee law, Brawner's and Brister's opinions regarding that
loss are irrelevant and otherwise unreliable. (ECF No. 58-1 at
PageID 400-02; 59-1 at PageID 489.) Haney responded in opposition
to both motions on December 5, 2024. (ECF Nos. 63, 64.)

---

486; 64 at PageID 668-72.) Because the expert signs his report
"Bill M. Brister," (ECF No. 59-2 at PageID 495), the court will
refer to him as "Brister."

## II.  ANALYSIS

### A.  Rule 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the United States Supreme Court held that Rule 702 requires that trial courts perform a "gate-keeping role" when considering the admissibility of expert testimony. 509 U.S. at 597. Rule 702 was amended effective December 1, 2023, and now states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2] Rule 702 applies not only to scientific testimony, but also to other types of expert testimony based on

---

[2]The amendment was meant to clarify that the proponent must demonstrate "that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the

technical or other specialized knowledge. See Kumho Tire Co., Ltd.

v. Carmichael, 526 U.S. 137, 147, 149 (1999).

The court's gate-keeping role is two-fold. First, the court

must determine whether the testimony is reliable. See Daubert, 509

U.S. at 590. The reliability analysis focuses on whether the

reasoning or methodology underlying the opinion is scientifically

valid. Id.; see also Decker v. GE Healthcare Inc., 770 F.3d 378,

391 (6th Cir. 2014). "To be reliable, the opinion must not have

'too great an analytical gap' between the expert's conclusion, on

the one hand, and the data that allegedly supports it, on the

other." Lozar v. Birds Eye Foods, Inc., 529 F. App'x 527, 530 (6th

Cir. 2013) (quoting Tamraz v. Lincoln Elec. Co., 620 F.3d 665,

675–76 (6th Cir. 2010)). The proponent of the testimony does not

have the burden of establishing that it is correct, but that by a

preponderance of the evidence, it is reliable. Rose v. Matrixx

Initiatives, Inc., No. 07–2404–JPM/tmp, 2009 WL 902311, at *5 (W.D.

Tenn. Mar. 31, 2009).

To aid with this analysis, the Supreme Court has proposed

four factors to consider when analyzing reliability: whether a

method has been tested, whether it has been peer reviewed, whether

it has a high rate of error, and whether it is generally accepted

---

rule," and that "each expert opinion must stay within the bounds
of what can be concluded from a reliable application of the
expert's basis and methodology." Fed. R. Evid. 702 advisory
committee's notes to 2023 amendments.

within the relevant community. Id. at 592-94. The Supreme Court noted that these factors are not a "definitive checklist or test." Id. at 593. Rather, the determination of reliability is a flexible analysis. Id. The Daubert factors "'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" In re Scrap Metal Antitrust Litig., 527 F.3d 517, 529 (6th Cir. 2008) (quoting Gross v. Comm'r of Internal Revenue, 272 F.3d 333, 339 (6th Cir. 2001)). When nonscientific expert testimony is involved, the court's analysis may focus upon the expert's personal knowledge or experience, because "the factors enumerated in Daubert cannot readily be applied to measure the reliability of such testimony." Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 295 (6th Cir. 2007) (citing Kumho Tire, 526 U.S. at 150 & First Tenn. Bank Nat'l Ass'n v. Barreto, 268 F.3d 319, 333 (6th Cir. 2001)); see also United States v. Jones, 107 F.3d 1147, 1155 (6th Cir. 1997) (reasoning that "a non-scientific expert's experience and training bear a strong correlation to the reliability of the expert's testimony").

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; in other words, the court must determine whether the opinion is relevant. See Daubert, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit"

- 6 -

between the proffered testimony and the issues to be resolved at trial. See United States v. Bonds, 12 F.3d 540, 555 (6th Cir. 1993); Brock v. Positive Changes Hypnosis, LLC, 589 F. Supp. 2d 974, 980 (W.D. Tenn. 2008). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant. The rejection of expert testimony, however, is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Burgett v. Troy-Bilt LLC, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendments) (quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

*i. Bruce Brawner*

Blazin Wings does not challenge Brawner's qualifications as an expert, but instead questions the necessity and reliability of his opinions. Blazin Wings first argues that Brawner's expert testimony is not necessary for the jury to calculate Haney's lost earning capacity. (ECF No. 18-1 at PageID 395-96.) It cites Wilson v. Greyhound Lines, Inc., No. 13-cv-3013-SHL-cgc, 2016 WL 8314608, at *3 (W.D. Tenn. Jan. 19, 2016), for the proposition that Haney can testify to how his injuries have impacted his ability to work.

(ECF No. 58-1 at PageID 395-96.) Haney argues that "[a] party testifying that their injuries affect their earning capacity is not the same as providing a full expert opinion of what those losses are." (ECF No. 63 at PageID 579.)

Rule 702 specifically provides that an expert may testify where they help "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The undersigned finds that Brawner's testimony is relevant to assessing the extent of Haney's losses. "Issues of economic loss and how such loss is calculated are not everyday issues for most laymen," Crouch v. John Jewell Aircraft, Inc., No. 3:07-CV-638-DJH, 2016 WL 157464, at *13 (W.D. Ky. Jan. 12, 2016), and expert testimony is often used to prove loss of earnings, Honeycutt v. Cabins for You, LLC, No. 3:21-cv-311, 2023 WL 6055970, at *6-8 (E.D. Tenn. Mar. 13, 2023) (denying defendants' motion to exclude expert testimony on lost wages); Scanlan v. Sunbeam Prods., Inc., No. 3:12-CV-9-S, 2015 WL 10711206, at *21-22 (W.D. Ky. Sept. 1, 2015) (denying defendant's motion to exclude expert testimony on lost wages). Blazin Wings's argument that Haney's testimony alone is sufficient to establish his damages, and its reliance on Wilson, is misplaced. That case specifically discusses the plaintiff's ability to testify as a lay expert to the obvious nature of the injuries he suffered——not technical aspects or medical diagnoses——for both causation and his ability to work and future earning

capacity. Wilson, 2016 WL 8314608, at *3. Similarly, Haney would be able to testify to the obvious nature of his symptoms and its impact on his ability to work. But it does not follow that an expert witness's testimony is unnecessary to help establish the extent of his losses. This basis is thus insufficient to exclude Brawner's testimony.

Blazin Wings also argues that Brawner's opinions are unreliable and untrustworthy under Rule 702. (ECF No. 58-1 at PageID 396-400.) It takes issue with several aspects of Brawner's approach, including his reliance on Department of Labor data for "ATM Servicers" to calculate Haney's pre-incident earning capacity; his use of that data instead of Haney's own financial records; his failure to consider that Haney still earned income from his ATMs in the months that immediately followed his fall;[3] and his failure to consider several of Haney's unique factors in calculating his work life expectancy. (Id.) In response, Haney argues that "the data [] Brawner used to form his opinions is of the type typically and reasonably relied upon in his field." (ECF No. 63 at PageID 580.) According to Haney, though an ATM Servicer "is not an exact match . . . Department of Labor data is reliable and often relied upon for this type of analysis." (Id.)

---

[3]At the January 8 hearing, Haney's counsel explained that both Brawner and Brister testified that this income was for work performed pre-incident. (See ECF Nos. 63-1 at PageID 632; 64-1 at PageID 695-96.)

Considering the parties' arguments and Brawner's expert report, the undersigned finds that Brawner's opinion is admissible under Rule 702 because it is both reliable and relevant. The portion of Brawner's report focusing on Haney's lost wages contains a thorough overview of Haney's personal background, his pre-incident work history, and his post-incident medical treatment and evaluation. (ECF No. 58-7.) The information and resources Brawner used to draw his conclusions include personal interviews with Haney, Department of Labor data, and vocational rehabilitation literature. (Id.) To reach his conclusions, Brawner applied the Vocational Diagnosis and Assessment of Residual Employability ("VDARE") methodology. (Id.) Brawner also explains the bases for his assumptions, including that he used Department of Labor data because industry literature recommends doing so where "actual wage records/tax records are not available." (Id. at PageID 447.)

Blazin Wings does not appear to challenge the reliability of the VDARE methodology, but rather challenges the data Brawner used and the assumptions he made. While the ATM Servicer position may be an inexact fit for Haney's position as an ATM business owner and his actual financial records may have been useful, Department of Labor statistics are routinely relied upon by experts to calculate lost earnings. See, e.g., Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 728-29 (6th Cir. 2012). And, even where historical earnings are relevant, "lost earning capacity does not

necessarily rely on a plaintiff's historical earnings." Id. at 728. Projections of lost wages, by nature, involve a degree of speculation; even where an expert's factual bases for their conclusions are not "particularly strong . . . it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak." Id. at 729 (quoting Boyar v. Korean Air Lines Co., 954 F. Supp. 4, 7 (D.D.C. 1996)) (internal quotations omitted). Indeed, "[c]hallenges to an expert's factual assumptions go to the weight of the opinion rather than its admissibility." McGuire v. City of Sweetwater, Tenn., No. 3:19-CV-00014-DCLC-DCP, 2020 WL 3988012, at *4 (E.D. Tenn. June 11, 2020) (citing In re Scrap Metal, 527 F.3d at 529). Blazin Wings is free to probe Brawner's findings through cross-examination and the presentation of contrary evidence. Id. (citing Daubert, 509 U.S. at 596).

Blazin Wings also argues that Brawner's calculation of Haney's work life expectancy is unreliable. Brawner concludes that Haney has a statistical work life expectancy of 2.06 years based on his age, gender, and education. (ECF No. 58-7 at PageID 448.) Blazin Wings argues that Brawner did not account for Haney's health and medical history, including that Haney has diabetes and has had both his bladder and prostate removed. (ECF No. 58-1 at PageID 399.) It cites Sheffield v. International Paper Co., No. 2:18-cv-02701-JPM-cgc, 2020 WL 1882906 (W.D. Tenn. Feb. 26, 2020), to argue

that Brawner's testimony should be excluded on this basis. However, Sheffield is easily distinguishable. In that case, the expert's failure to consider the plaintiff's unique history was but one of a myriad of critical issues with his report, including that his report was only two-and-a-half pages, his "projections [were] untethered from [the plaintiff's] wage history," and he failed to explain his assumptions and methodology for critical calculations. Id. at *2-4. Again, Blazin Wings may challenge Brawner's conclusions through cross-examination and the presentation of contrary evidence. But Blazin Wings's objections to Brawner's work-life expectancy calculation do not warrant exclusion of his opinion.

Thus, the undersigned finds that Haney has met his burden under Rule 702. Accordingly, Blazin Wings's first motion is DENIED on this basis.

*ii.  Bill Brister*

As with Brawner, Blazin Wings does not challenge Brister's qualifications or his underlying methodology. Instead, Blazin Wings argues that Brister's opinion is unreliable under Rule 702 because he relied on the "unreliable and untrustworthy" data provided by Brawner. (ECF No. 59-1 at PageID 489.) In response, Haney argues that experts may rely upon data and tests collected and performed by others. (ECF No. 64 at PageID 670.)

Considering the parties' arguments and Brister's expert report, the undersigned finds that Brister's opinion is admissible under Rule 702. In his report, Brister relies on the lost earnings calculations provided by Brawner and government data to calculate the present value of those losses. (ECF No. 59-2.) In the appendices to his report, Brister outlines his calculations for various scenarios and provides the sources he relied on. (Id. at PageID 496-503.) Blazin Wings has presented no authority that an expert may not rely on the calculations of another expert. Indeed, under Rule 703 of the Federal Rules of Evidence, "experts may rely on data from others, at least to the extent that the data is of the type reasonably relied on by other experts in the field." United States v. Roberts, 830 F. Supp. 2d 372, 383 (M.D. Tenn. 2011) (citing Fed. R. Evid. 703; Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 675 (6th Cir. 2010); Matter of James Wilson Assoc., 965 F.2d 160, 172 (7th Cir. 1992)). In sum, Blazin Wings's argument as to the reliability of Brister's report is premised almost entirely on its belief that Brawner's report is unreliable. Because of the above finding that Brawner's opinion regarding Haney's lost wages is reliable, this argument fails. Additionally, Brister's opinion is relevant to the issue of Haney's damages.

In the absence of any other argument, there is no basis to conclude that Brister's expert opinion as to Haney's lost wages is unreliable. Furthermore, Brister's opinion is relevant to the

issue of Haney's damages. Haney has thus met his burden under Rule
702. Accordingly, Blazin Wings's second motion to exclude is DENIED
on this basis.

**B.    Rule 403**

Blazin Wings also argues that Brawner's testimony should be
excluded under Rule 403 of the Federal Rules of Evidence because
it will confuse the jury and waste time. (ECF No. 58-1 at PageID
400.) In cursory fashion, it argues that the jury "is capable of
looking at the evidence and making a determination about what, if
any loss of earnings [Haney] suffered as a result of the injuries."
(Id.) Rule 403 provides that "[t]he court may exclude relevant
evidence if its probative value is substantially outweighed by a
danger of one or more of the following: unfair prejudice, confusing
the issues, misleading the jury, undue delay, wasting time, or
needlessly presenting cumulative evidence." Fed. R. Evid. 403. As
discussed above, Brawner's testimony is relevant to the issue of
damages and thus highly probative. The jury is capable of weighing
the evidence before it, and it is not plainly apparent that
probative testimony on Haney's lost earnings would confuse the
jury. Thus, Blazin Wings has not shown that Brawner's testimony
should be excluded under Rule 403, and its first motion is DENIED
on this basis.

Blazin Wings likewise argues that Brister's testimony should
be excluded under Rule 403 because it "parrot's [sic] [] Brawner's

calculations," and is thus unnecessarily cumulative. (ECF No. 59-1 at PageID 488.) Haney argues that Brister performed a different analytical process and provides "a unique and valuable analysis of the present value of [Haney's] lost earnings." (ECF No. 64 at PageID 671.) As noted above, Brister's testimony is probative as to the issue of damages. Furthermore, reliance on another expert's report does not necessarily render that expert's testimony cumulative. See Walker ex rel. his Ct. Appointed Curator v. United Healthcare of Hardin, Inc., No. 3:07-00067-JHM, 2010 WL 3092648, at *2 (W.D. Ky. Aug. 6, 2010) (explaining that a medical expert's reliance on another treating physician's diagnosis "does not render the retained medical expert's testimony cumulative"). While Brister's report may go to the same issue, it nonetheless offers a distinct perspective on the time-value of Haney's purported losses. Accordingly, Blazin Wings's second motion is DENIED on this basis.

## C.    Loss of Household Services

Lastly, the court considers Blazin Wings's argument that neither Brawner nor Brister should be permitted to testify regarding Haney's loss of household services. Citing Dwyer v. Southwest Airlines Company, Blazin Wings asserts that "Tennessee law does not allow for this type of damages to the Plaintiff[.]" (ECF No. 58-1 at PageID 401 (citing Dwyer, No. 3:16-CV-03262, 2019 WL 2025243, at *4 (M.D. Tenn. May 8, 2019).) According to Blazin

Wings, Haney therefore cannot recover for the loss of the value of his own household services, and any expert testimony regarding this loss "will do nothing but confuse the jury." (Id.)

The court finds Blazin Wings's argument persuasive. In Dwyer, Judge Trauger of the Middle District of Tennessee denied plaintiff's motion to amend her complaint to add a damages claim for "loss of the value of past and future household services." 2019 WL 2025243, at *2, 7. After extensive review of the admittedly "sparse" law available from both Tennessee and federal courts, the Dwyer court concluded: "Tennessee courts have not recognized a plaintiff's loss of the value of [their] own household services as a category of recoverable non-economic damages." 2019 WL 2025243, at *4; see also Cone v. Hankook Tire Co., Ltd., No. 14-1122, 2017 WL 401795, at *4 (W.D. Tenn. Jan. 25, 2017) ("The Court has not found[] . . . any cases where damages for loss of household services were awarded to an injured person."). Having reviewed Dwyer's analysis, the undersigned adopts this conclusion. Accordingly, Haney is not entitled to the value of his own household services as a category of recovery.

The Dwyer court nevertheless recognized that, "although [a] plaintiff cannot recover for the loss of the value of her own household services, some components of that type of damages are recoverable under damages categories already recognized by Tennessee law." 2019 WL 2025243, at *4. For example:

- 16 -

> [I]f the plaintiff proves that, as a result of her
> injuries, she has been, or will be (for instance, when
> her friends and family members tire of helping her),
> required to *pay* for services she previously provided for
> herself, including such services as lawn and yard work,
> cooking, housecleaning, and so forth, Tennessee law
> contemplates that she will be able to recover for these
> expenditures as a part of her economic damages.

Id. (emphasis in original). The undersigned thus recognizes that

Haney, through his testimony or that of his experts, could

establish that he has or will incur actual expenditures for

household services he is no longer able to provide himself.

However, neither Brawner's nor Brister's opinions regarding

loss of household services appear to be based on Haney's actual or

predicted *expenditures*.[4] Although Haney disagrees with Blazin

Wings's argument that Brawner did not take into consideration any

"unique factors related to the Plaintiff," Haney concedes that

Brawner "took a history from Plaintiff and applied calculations

from Dollar Value of a Day" to estimate Haney's lifetime future

loss of household services. (ECF No. 63 at PageID 581.) In other

words, Brawner relied on "expectancy data" provided by the

Department of Labor to inform his calculation—not testimony from

Haney regarding what he had paid or would pay someone else to

perform household services. (See id. (quoting ECF No. 63-1 at

---

[4]The court declines to speculate as to what other evidence would
be sufficient to recover under the alternative categories of
damages identified in Dwyer. See 2019 WL 2025243, at *4. Instead,
the instant analysis is confined to the descriptions of Haney's
loss of household services in the experts' reports.

PageID 638).) Similarly, in his expert report, Brister does not identify any actual or predicted expenditures incurred by Haney on which he based his present value of lost household services figure. (See ECF No. 58-2 at PageID 494-95 (identifying Brawner's report as well as publicly available economic and life expectancy data).) Without making any determination as to the reliability of these figures, the court finds that Brawner's and Brister's estimates fall within the category of non-economic loss of household services damages not recognized by Tennessee law. See Dwyer, 2019 WL 2025243, at *4. Blazin Wings's motions are therefore GRANTED on that basis. Brawner's and Brister's expert opinions regarding Haney's loss of household services are hereby excluded.

### III. CONCLUSION

For the foregoing reasons, defendant Blazin Wings's Motions in Limine to Exclude Expert Testimony of Bruce Brawner and Malcolm Brister are GRANTED in part and DENIED in part.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 4, 2025
Date